**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren C. Kiss

*Special Litigation Counsel to Yann Geron,*
  *Chapter 7 Trustee of the Estate of Nanobeak*
  *Biotech Inc.*

Hearing Date: August 3, 2023
Hearing Time: 10:00 a.m. (EST)

Objection Deadline: July 27, 2023

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
In re                                           :

:      Chapter 7

NANOBEAK BIOTECH INC.,          :

:      Case No. 21-11600 (MG)

               Debtor.       :
-----------------------------------------------------------x

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO
FED. R. BANKR. P. 9019, APPROVING THE STIPULATION SETTLING
AND RESOLVING CLAIMS AGAINST TREVOR DAY SCHOOL**

**TO THE HONORABLE MARTIN GLENN,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

      Yann Geron, the Chapter 7 Trustee (the "Trustee") for the estate of Nanobeak Biotech Inc. (the "Debtor"), by and through his special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP, submits this motion (the "Motion") seeking entry of an order in substantially the same form as that annexed hereto as Exhibit A (the "Proposed Order"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving that certain settlement agreement (the "Stipulation"), a copy of which is annexed hereto as Exhibit B, by and between the Trustee and Trevor Day School ("Trevor" and together with the Trustee, the "Parties" or each a "Party"), and respectfully sets forth as follows:

1

## PRELIMINARY STATEMENT

A forensic accounting review prepared for the Debtor revealed that, from 2014 to 2019, the Debtor received approximately $14 million from investments and other sources. During this same time period, only $4.7 million of that appeared to have been expended on legitimate business expenses. As a result of the Trustee's investigation, the Trustee has alleged that James Jeremy Barbera ("Barbera"), the Debtor's former Chief Executive Officer, used the Debtor as his own personal piggy bank and converted the Debtor's funds for his own personal benefit, leaving less than $14,000 in the Debtor's bank account when he resigned.

As a result of Barbera's alleged participation in a scheme to defraud dozens of the Debtor's investors by soliciting investments through false and misleading statements, failing to use the investors' funds as promised, and converting investors' money for his own use, Barbera was arrested on December 9, 2020. On February 17, 2022, a jury found Barbera guilty of the following three counts: conspiracy to commit securities fraud, securities fraud, and wire fraud. A judgment (the "Judgment") was entered on May 17, 2023, pursuant to which Barbera was sentenced to forty-eight (48) months in prison and ordered to forfeit $7,026,150 to the United States of America. Barbera has filed a notice of appeal of the Judgment.

The Trustee's investigation has revealed that Barbera improperly used funds in the Debtor's bank accounts to pay his and his family's personal obligations, including the payments, totaling $27,439.98, made by the Debtor to Trevor to pay for the high school tuition for Barbera's daughter. The Trustee has asserted that the funds used to make these fraudulent conveyances belong to the Debtor and should have been used for legitimate business purposes, like satisfying the claims of the Debtor's lawful creditors. After good faith negotiation, the Trustee and Trevor have reached a compromise of these disputes and by this Motion seek the Court's approval of the

same. Pursuant to the Stipulation the Parties have agreed upon the following, for which they seek Court approval of: Trevor shall make a settlement payment in the amount of $20,579.99 to the Trustee, Trevor shall have an allowed general unsecured claim pursuant to section 502(h) of the Bankruptcy Code in the amount of $20,579.99, and the parties will exchange mutual releases.

For all the reasons set forth below, the Trustee respectfully submits that approval of the Stipulation is in the best interest of the Debtor's estate and its creditors and accordingly, that it should be approved.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

2. Venue of this case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief sought herein is Bankruptcy Rule 9019.

## BACKGROUND

**A. Case Background**

4. On September 10, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

5. On or about the Petition Date, Yann Geron was appointed interim trustee of the Debtor's estate. On October 8, 2021, the Trustee presided over the first meeting of creditors conducted pursuant to section 341(a) of the Bankruptcy Code and duly qualified and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

### B. The Debtor and Its Business

6. The Debtor is a closely held corporation organized under the law of Delaware with its principal place of business in New York. Barbera established the Debtor in 2009 and served as its CEO from 2009 until his resignation in October 2019. The Debtor was created to develop technologies focused on the detection of early-stage lung cancer.

7. In December 2013, the Debtor completed a partially exclusive master licensing agreement with The National Aeronautics and Space Administration ("NASA") granting the Debtor a license to certain patents which permitted the Debtor to use and develop breath analysis screening technologies.

8. Under the licensing agreement with NASA, the Debtor agreed to certain milestones for the development of breath screening products. Such milestones included conducting clinical trials and the formalization of sales and marketing channels for screening products. None of the milestones were met.

9. Starting in October 2016, the Debtor entered into a series of agreements with a nationally recognized research university (the "University") to perform research and sponsor a clinical trial as contemplated by the NASA license agreement.

10. The Debtor routinely made late payments to the University or failed to make payments at all, resulting in delays in meeting the milestones established under the agreement with NASA. Ultimately, the project was completed by the University in May 2020.

### C. Barbera's Conversion of the Debtor's Funds

11. Facing pressure from the Board and the Debtor's stockholders due to the Debtor's deteriorating financial condition and his inability to complete the Debtor's development goals, Barbera resigned as the Debtor's CEO in October 2019.

12. A forensic accounting review prepared for the Debtor revealed that, from 2014 to 2019, the Debtor received approximately $14 million from investments and other sources. During this same time period, only $4.7 million of that appeared to have been expended on legitimate business expenses. As a result of the Trustee's investigation, the Trustee has alleged that Barbera, the Debtor's former Chief Executive Officer, used the Debtor as his own personal piggy bank and converted the Debtor's funds for his own personal benefit, leaving less than $14,000 in the Debtor's bank account when he resigned.

13. The Trustee has been tasked with the duty to investigate the Debtor's financial affairs and pursue any claims or causes of action that belong to the Debtor's estate.

**D.  Payments to Trevor Day School**

14. The Trustee has identified the following wire transfers made by the Debtor to Trevor from the Debtor's bank account at JPMorgan Chase Bank, N.A., Account No. ending in 0295 (collectively, the "Transfers"):

| Transferor | Transferee | Date | Amount |
|---|---|---|---|
| Nanobeak, Inc. | Trevor Day School | June 8, 2016 | $7,439.98 |
| Nanobeak, Inc. | Trevor Day School | August 9, 2016 | $10,000.00 |
| Nanobeak, Inc. | Trevor Day School | August 24, 2016 | $10,000.00 |
| **TOTAL**: | | | **$27,439.98** |

15. There is no known permissible reason for the Debtor making the Transfers.

16. It is the Trustee's understanding that Barbera directed the Transfers to be made to Trevor on account of Chloe Barbera's high school tuition when she was a student at Trevor. Chloe Barbera is Barbera's daughter.

17. By letter dated April 13, 2023 (the "Demand Letter"), the Trustee informed Trevor that the Trustee would be seeking to avoid and recover the Transfers as constructive and/or actual fraudulent transfers and demanded the return of the Transfers from Trevor, totaling $27,439.98.

18. The Parties have reached the proposed settlement after good faith and arms' length negotiations and in order to avoid the costs, burdens and risks of continued litigation.

19. By way of summary, the Stipulation provides for the following[1]:

- **Settlement Payments and Delivery**: Within five (5) business days of the Approval Order becoming a Final Order (as such terms are defined below), Trevor shall pay the sum of $20,579.99 (the "Settlement Payment") to the Trustee. The Settlement Payment shall be made payable to "Yann Geron, as Chapter 7 Trustee" and delivered to the undersigned counsel to the Trustee.

- **Bankruptcy Court Approval Required**. The Stipulation is subject in all respects to the approval of the Bankruptcy Court evidenced by the entry of a written order (an "Approval Order"), and such Approval Order becoming a final and non-appealable order (a "Final Order"). The Trustee shall file a motion seeking an Approval Order by no later than four (4) weeks following the signing of the Stipulation by all parties.

- **Conditions Precedent**. The terms of the Stipulation shall become effective upon the Approval Order by the Bankruptcy Court becoming a Final Order and upon payment of the Settlement Payment by Trevor to the Trustee as set forth in paragraph 2 of the Stipulation (the "Effective Date"). Notwithstanding the foregoing, the terms of Paragraph 8 of the Stipulation shall be deemed binding and enforceable upon each Party's execution of this Stipulation.

- **502(h) Claim**: Upon the Effective Date, Trevor shall have an allowed general unsecured claim in the amount of $20,579.99 (the "Section 502(h) Claim") pursuant to pursuant to section 502(h) of the Bankruptcy Code.

- **Mutual Releases**: Upon the Effective Date, the Trustee on the one hand, and Trevor on the other hand, will provide each other with mutual releases.

## RELIEF REQUESTED

20. By this Motion, the Trustee seeks this Court's approval of the Stipulation, and asserts that the terms, conditions, and compromises contained therein are fair and reasonable under

---

[1] For the purposes of this Motion, and for ease of reference, a summary of the Stipulation's terms is set forth below. This summary does not alter, amend or supplement the terms set forth in the Stipulation. To the extent there is any express or implied conflict between the terms of the Stipulation and the description contained herein, the terms of the Stipulation control.

6

the circumstances, and that approval of the Stipulation is in the best interest of the Debtor's estate and creditors.

21. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968); Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103 (Bankr. S.D.N.Y. 1993).

22. In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

23. To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co), 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re Int'l Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

24. The Court should also consider the fair and reasonable course of action for the Debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In

re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

25. The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement reaches the threshold of reasonableness. Instead, the Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the best interests of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

26. Here, more than one factor was considered by the Trustee in determining that entry into the Stipulation was in the best interests of the Debtor's estate and its creditors.

27. The Trustee believes that there is significant benefit to resolving these issues quickly and securing value for the Debtor's estate, totaling $20,579.99, in the aggregate, without further litigation. Indeed, the Trustee asserts that a twenty-five percent (25%) discount off the face amount of the claim represents a reasonable discount when considering only the general costs of litigation and collection in these matters. If the Parties did not reach a settlement, the Trustee would need to file a complaint against Trevor and prosecute the adversary proceeding – which the Parties expect to be expensive for both sides.

28. For the foregoing reasons, the Trustee believes that the terms of the Stipulation are fair, reasonable and in the best interests of the Debtor's estate and its creditors. Accordingly, the Trustee respectfully requests that this Court approve the Stipulation.

**NOTICE**

29. In accordance with Bankruptcy Rule 2002 notice of the Motion will be served upon the United States Trustee, all creditors, and all parties having filed a notice of appearance in the Debtor's case. The Trustee respectfully submits that such notice be deemed sufficient under the circumstances and that no additional notice need be given.

**NO PRIOR RELIEF**

30. No previous application for the relief requested herein has been made to this or any other court.

[*Continued on Next Page*]

**WHEREFORE**, the Trustee respectfully request that the Court (I) enter the Proposed Order in substantially the same form as that annexed hereto as Exhibit A; and (II) grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 30, 2023

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Lauren C. Kiss*
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
lkiss@klestadt.com

*Special Litigation Counsel to Yann Geron, the Chapter 7 Trustee of the Estate of Nanobeak Biotech Inc.*